Page 14-3172 Child Evangelism Fellowship et al. v. Cleveland Metropolitan School et al. Oral argument, 15 minutes per side. Mr. Staver for the appellant. You may have your time to get organized here. We're rushing you a bit. Whenever you're ready. May it please the court. My name is Matt Staver and I respectfully request that this court reverse the judgment of the district court below, because the policies at issue violate the First Amendment. The relevant facts of this case indicate that up until the fall of 2012, CEF received equal treatment to the scouts. Both used the facilities at no charge. You might as well stop there, because as you know, there's a disagreement about whether the scouts used it at no charge, that there was an arrangement made to compensate. To just say at no charge, you know and we know that there's an argument that there were arrangements made with the scouts and others to treat as compensation. Yes, in fact, what the district says is that they didn't have a no charge policy or a fee waiver, but they had an in-kind arrangement. Nowhere is that in-kind arrangement in writing. The only time that it's in writing is in a letter to the scouts in which it says in-kind services, doesn't even mention goods, and it doesn't mention the three prongs that first appeared during a litigation affidavit. It's at that time that the district said that they don't have a fee waiver, it's an in-kind arrangement in, quote, limited circumstances, which is in paragraph seven of Jackson's affidavit at the record of 108. In limited circumstances, they say, the district has agreed to accept in-kind goods or services as payment of the permit fee. Then they actually go on to say the scouts were part of that limited circumstance. And they also point to a church that was allegedly part of that limited circumstance. When they eventually republish this policy of the permit fee in October of 2012, after the litigation. Oh, after the litigation. After the litigation, the permit policy in terms of the hourly rate. There's still no mention of an alternative option of an in-kind services arrangement. But you don't know that you wouldn't also be the beneficiary of that policy. They're just saying you've never asked for one. Well, this is a classic prior restraint because whether or not actual discrimination occurred, the question is whether on the face of these policies is there anything to prevent the district from engaging in unbridled discretion. And the fact is there's none. Indeed, what we're seeing here is a classic prior restraint. Prior permission is a, by definition, prior restraint. To be constitutional, the prior restraint has to have a specific objective and specific criteria. It also has to not allow the decision maker to have unbridled discretion. It has to have a time frame. These policies don't match any of those. You're saying that the existence of an in-kind arrangement is unconstitutional because why? It's not in and of itself it wouldn't be unconstitutional. But this in-kind arrangement policy is unconstitutional for several reasons. Number one, do you agree that it's in existence? I took your argument to be there really wasn't such a thing. We seem to agree that that was legitimate. Even today, for example, you can't find in-kind arrangement policy. Written. Written anywhere. And even today, you only can find the so-called three prongs in an affidavit post-litigation. The three prongs say that the speaker can exchange goods or services, uses the disjunctive for one of three things, has to match three things, that the goods or services are equal to or greater than the permit fee, of tangible benefit, and that the district can't provide it itself. So now you're referencing the later policy, the now, the one that post-litigation policy. The one that's in the affidavit. And they say that you could have found this out by doing a public records request and you could have gotten the scout's letter. But the scout's letter says in-kind services, and it doesn't mention the three prongs. And, in fact, the fourth prong. But it's suggestive that there's an in-kind arrangement. No, it doesn't. From a prior restraint standpoint, from the speaker's standpoint, how do we know what the criteria is to meet? There are no three prongs. We don't know what a tangible benefit to a student or staff means. That's up to the decision maker. In fact, the fourth prong appears. Is that the real constitutional violation here is that this was informal? No. It was that it has no standards and no guidelines. That could be as a result of the informality of it. Well, if you look at just the two examples of this, let's look at the fourth prong appears on the appeal. They magically create a fourth prong in their brief. The fourth prong is this. It focuses on goods, not services. And the fourth prong is that the goods have to be beyond the normal programming cost. Now, that's not in the scout's letter. It's not in the affidavit post-litigation. It first appears in their brief on appeals. And now it has four prongs. And then to the programming cost, they point to the scout's website. Look at what the scouts provide, they say. This is the in-kind services that they're providing in lieu of the hourly fee. But on that same website, it also says that these goods. Providing to the scouts. Right. Not to the school district. No, but the school district points to the scout's website for the kind of in-kind services. But I just thought it was, from the outset, I was kind of surprised that the in-kind went to the users, the school kids, rather than the school system. In fact, that's a good point, Judge Cook, because if you look at the hourly rate for the usage, it goes specifically on page four of their answer brief to the district. Those fees go to the district. Then on page ten of their answer brief, they say, well, the church, actually those goods go to the school. Page four says it goes to the district, not the school. Page ten, it says it goes to the school. And then the affidavit says it's an in-kind service that can go to the students, not even the school. But on that same page that they point to in their answer brief, for the kinds of services, goods now, that they've now changed it from services to goods, the scouts provide, it says that these often are provided free of charge. It says, in fact, for the parents, contact your local scout unit because these things can be provided free. So it doesn't even go beyond the normal programming cost. So did you ever say to them, look, whatever you call it, give it to us too? Yes, we did. In fact, we sent a letter, we did, after they have requested it several times. They got denied, and then they got ignored. Then we sent a letter, and we said that we are requesting equal treatment to that which is provided to the scouts. It's the first we, or they. You're talking about the church folks rather than their lawyer? No. No, the CEF people, first of all, asked for free uses like they had before. They said no. Like they had before. Like they had before. Because up until 2012, they had the same no charge for the school facilities as the scouts. They had used it at no charge. Correct. This was a new thing. This was a new thing that was superimposed. Then they came back and said, can we have it the same scenario? They said no. Isn't it your position? Haven't you argued, I didn't know about the in-kind policy at the time I sent the letter. So how can it be that you're saying that letter that you sent is a request for an in-kind arrangement when you didn't even know one existed? Well, we were requesting equal treatment to that which the scouts had. Which you thought was just a fee waiver. And so we're saying now if you were to go back and make this request and the school district were to grant it, you're right. You're entitled to an in-kind that you'd be arguing, no, I don't want it. This whole policy is unconstitutional. Here's two issues with that, Your Honor. First, we didn't know to use the magic words. They're faulting us because we didn't use the magic words. Second, if we knew the magic word in-kind arrangement, what is that? It's evolved even during this litigation. The scouts doesn't give the three-prong test. The affidavit post-litigation gives it. And then they add a fourth prong on appeal, no doubt. So what is the remedy for them to put it in writing? Well, the remedy for them is to cabin in the decision-maker so that, in fact, the decision-maker doesn't have this unbridled discretion. Let me give you an example, Judge White. If you look, for example, at the church, on page 10 of their brief, footnote 7, they say that they don't discriminate on the basis of viewpoint. See, we allow this church. But in their footnote, they specifically say, the church, and I'll quote, the church's arrangement was on terms more favorable to it as compared to BSA's arrangement, close quote. Now, they're trying to argue that they don't discriminate on the basis of viewpoint because they allow the church, but that statement says they're discriminating between even the church and the scouts. They say it's more favorable. And I'm very interested in the idea that they formerly permitted your church organization to use it free. C.E.F. is not a church, but that's correct. Okay. Oh, yes. It's a religious organization. Right. After school kind of thing. But talk more about that. Was that in the briefing? Yes, it is. Okay. I missed that. Yes, it is. They used to use it free. I would like to also, Your Honor, point you to Does that suggest that there wasn't First Amendment problems here? That there wasn't a violation? The fact that your organization, religious-based, and a church used the school? Yes, but that's on the viewpoint issue. Okay. On the prior restraint, if you go back to page 118 of the record, page 118, I'd like to draw your attention to that because that is the two-page letter of July of 2011 from the district to the church. In there, they say the cost of using this for three years is $149,000 and some change. We want you to provide $138,000 of upgrades. And on page 2, which is 118 of the record, it has $10,000 for 2011, 12, and 13. Now, the difference between the cost of using this over three years of $149,000 to $138,000 is about $9,000. But what you see on page 118 really illustrates the prior restraint problem. Right beside each $10,000 for each entry, it says, quote, district discretion. That's a classic prior restraint. Where are they coming up with the $10,000? It's much more than the $149,000 that it would cost to use it for three years. They just come up with it out of the blue. So contrary to them saying that the church is getting better treatment in rebuttal to our viewpoint argument, which if that's the case, it's a problem from a prior restraint standpoint because they're giving them better treatment. In reality, they're getting worse treatment because they're having to pay much more than what the fee is required. And it's based solely upon what? District discretion. As a speaker trying to engage in an in-kind arrangement, if we knew that it even exists and we wanted to say we want an in-kind arrangement, is it goods and services? To the scout's letter, it was services. Now on the answer brief, they focus on goods, not services. So you're basically saying it's a sham or it's just totally discretionary. Correct. Did you argue that to the district judge? Yes, we did. Did the judge make any findings as to whether there was a bona fide in-kind relationship with the Boy Scouts? The judge's four- or five-page decision only said that there was no evidence that there was a fee waiver policy. But that's not the question. The question is whether or not the district was discriminating against a similarly situated organization. They both provide after-school programs to the students free of charge. They both address the same subject matter of morals and character development. But how did you frame it to the court? By the time you were making these arguments, had it evolved to the point where you were saying, look, one problem is that there is no real policy, it's totally discretionary, and secondly, we asked for like-kind treatment, whatever it was, and I mean, by the way, what was the answer when you said, well, give us whatever you're giving them? They didn't respond. They continually, in fact, there's e-mails in the record that's part of the exhibits where we were going back and forth to the district's council. In fact, interestingly, we said, can you please give us a response because we would hate to learn what the policy is after litigation. And lo and behold, it pops up in an affidavit after litigation. So they never responded. We sent a letter not only to the district attorney but also to the entire school board. Okay, so what was the judge's answer to this argument that there's no real policy, whatever is there has unbridled discretion, and we asked to be treated similarly but we got no answer? The judge didn't address that, Your Honor. In fact, what the judge just simply said was that on a factual basis there was no evidence of a fee waiver. But that's not the issue before this court. It's a legal matter as to whether or not this is a prior restraint. Okay, and this case is still pending, right? Still pending. But on the face of even what we now have, the consolidated four-point prong policy, whether or not there's anything within that, and that's the CEF versus Anderson case, it's also the City of Lakewood Supreme Court decision, that would restrain the decision maker from engaging in unbridled discretion. The answer to that is clearly no. They even used the words discretion in the same document that they point us to as evidence, that they don't discriminate. So discretion, the words here in that document, discretion equates to discrimination? It may or may not. It may or may not, right. That's the problem. I think that's one of the many instances on the prior restraint because they even say it's district discretion. But we don't know, and they're not going to be able to tell you when they argue, what that parameter is. What is the district discretion? What is a tangible benefit to a student? We don't know. What is beyond the normal programming cost? And is that legitimate? I mean, is that a basis to grant a waiver? Is that okay if they give benefit to a student? I mean, how do you judge that? It's not unconstitutional to do that. They can have a policy that does that. But it has to be specific. It has to be objective. It has to have a standard. And we have to know if we meet this criteria, we're either in or out. Do you give things to students? Yes, we do. In fact, we provide the curriculum that's in the record. We provide free drinks and other kinds of things and cookies and snacks to them. We provide coloring books and things like that to the students. That's all in the record. And by the way, Judge White. That was all offered. What I'm afraid is that this never was teed up in a way that would allow you to prevail. No, Your Honor, all of that is in the record. All of it is in the record. I realize, but it's post. I meant that the school district never had all of the things that now occur to you. They've never had a request from your organization to use the schools or have in-kind treatment. They had a request for equal treatment to what the Scots are getting. Now, they could have come back and said, We don't have a fee waiver. We've got an in-kind arrangement. Here's the policy. Fine. Then the issue is whether that policy that has now evolved to a fourth prong is constitutional on its face. So here we are with a policy that's evolved through this litigation. On its face, it doesn't bridle in the decision maker. It's discretionary, and they continually change their points. This was briefed before the district judge because they brought up the in-kind arrangement in their answer brief and we came, or answer memorandum, and we responded in the reply memorandum. Are you asking that it be struck down or that you be given equal access? We're asking that it be struck down. The way it is right now, it needs to be enjoined. Now, the school can come up with a more specific policy, but this policy, this practice violates the First Amendment. So basically, it's strike it down and you still have to pay. If there really is an in-kind arrangement, then we need to know specifically how do we meet that criteria. And right now, it started off as services in the scout's letter with no three prongs. It evolved to three prongs. Now it's a fourth prong and it's focused on goods, not services. If you look at the scouts in the CEF, they do the same things because they provide free curriculum, they provide free snacks, they provide no charge to those that participate, and they do it after school. Uniforms. I thought uniforms. There was a significant amount of money in uniforms, wasn't it, that made it enhance the value? Yes, but they point to, Judge Cook, the scouts' website. Which says you may get your uniform. Free. Free. In other words, so it doesn't even meet the fourth prong beyond the normal programming cost that they invented on appeal. The fourth prong is it has to be whatever they're providing beyond the normal programming cost. They're saying to a CEF, well, you provide that free whether you're at the district or outside the district. But the same website page where they say this is what the scouts provide also says we're going to provide it to you if you ask it for free. So what they provide outside the district, they're providing to the district. It's not beyond the normal programming cost. We do the same things and we ought to be treated equally. Whether it's the same fee or whether it's an in-kind arrangement, we ought to have the same equal treatment. And they constantly move the ball around and invent new policies even on the eve of litigation in this appeal. And that is the classic prior restraint problem. In any event, the district court didn't address any of this, right? The district court didn't. I mean, it was all before the district court. It was all briefed and it was all argued before the district court. And all the district court said was there was no evidence of a fee waiver policy. Sorry, that's it. And yet all of this was before the court. All of it was briefed. All of what we're talking about today is in the record. Thank you, counsel. Thank you. Good morning. May it please the court. My name is Jeff Weddle. I'm here on behalf of the Appalachian-Cleveland Metropolitan School District. This case is before this court on a very, very limited issue and on an even more limited evidentiary record. And we're looking at this as a limited public forum, are we not? Correct. And so what is our appropriate scrutiny? Appropriate scrutiny is less than a strict scrutiny. It's a little bit amorphous between a non-public. But essentially we have to show that any restraint is reasonable and reasonably related to the purpose of the forum. But we don't believe there's a restraint. If you look at what the trial court did in this case. Counsel makes a fairly strong argument about the organization that he represents was working against a moving target. I absolutely, fundamentally disagree with that. And, in fact, this quote-unquote fourth prong is something they invented in their brief. It is not a fourth prong. Okay, so. Because what, excuse me. Somebody, is this policy written anywhere? The, well. The in-kind exception to the fee policy. No. It's unwritten. It's an unwritten policy. Okay, and then. I'm taking liberties with even calling it a policy because if you look at the factual record. You call it an exception. We were approached by two organizations. And the organizations proposed paying the fee with something other than cash. The Boy Scouts come to us, and if you read Patrick Zahn's letter as a whole, not cherry-picking what you believe benefits your argument, but read the letter as a whole. Mr. Zahn's analysis is the Boy Scouts come to him and say, look, we are going to give $195 worth of stuff to 1,420 students. We're giving you $260,000. Why do we think that that will be back to the question about, does it go to, is it a benefit, does it have to benefit the school because the school is the one who's, it is the school building and the school district that is providing rather than the children? I think the analysis, if you look at Mr. Zahn's letter, is that our students are getting a direct benefit. Student benefit, not school district benefit. Correct. But don't you say that there's a $70 per hour fee to pay the janitor, the light, and heating? Yes. How does this benefit to the students enable the school to pay the janitor, the light, and the heating? The school will continue to pay that. What they're doing is the fact that our students are getting a benefit well above and beyond what the cost of that is, was satisfactory to the district because our students are getting $195 of free stuff each. Like what? They're getting their uniforms. They're getting all of their camping trips paid for. They're getting all of the supplies. Don't they provide that to everyone? Boy Scouts for free? Yes. Not that I'm aware of. There's certainly no evidence of that. The website says you can get it for free. The website, again, they very selectively quote the website, and they say there's a possibility that you may be able to go to a uniform bank. There's a possibility that for this select group you can do a free. The case that the plaintiffs tried to litigate is not the case that the district judge decided. Well, but you've got to look at what the district judge decided because what they did is substituted argument for evidence. And the district judge looked at this case and looked at the evidence that was before it, and they submitted none. There was no discovery. You have an unwritten in-kind policy that they are challenging. We have, and again. Don't call it whatever you want. You have an unwritten in-kind exception that you are extending to certain clubs or entities that they are challenging, and they're challenging on the basis that it is empty of content, shifting, and even the content that you give it questionably applies to the recipient of the whatever you want to call it. And the judge didn't decide that case. What the judge decided was, and let's look at how this case progressed. What they did before the district judge without putting forth any evidence whatsoever, none, is to say we are pursuing this case because it's a fee waiver. We responded saying there is not a fee waiver. We do not have a policy of a fee waiver. If you look at our community use policy, there is nothing related to a waiver. What we did, based on what the record was before the court, there were two instances where we were approached by organizations who proposed something in lieu of a payment and something that had a tangible, measurable price tag benefit on it. In those two limited instances... Benefit to the schools? I believe, Your Honor, the word church is clearly a benefit to the school. Right, the church, but not the Boy Scouts. Well, I don't believe that taking a benefit that is directly inuring to our students, that's a decision that the school made, that our kids are getting something. But aren't they getting something from the afternoon programs that the plaintiff is presenting? That's the problem. What the plaintiffs want to do here is to conflate the content or quote-unquote value of the program against something that's being given above and beyond the program. We are not looking at the program. If you look at the evidentiary record before this court, we don't look at the speaker, we don't look at the content of the speech, we don't look at the viewpoint of the speaker, which is the basis of a discrimination claim. You said we should look at something to know that you don't look at the content or the viewpoint. What were we to look at to do that? The two things that you look at is look at Patrick Zahn's letter to the Boy Scouts, where he looks at a value that is being given to our students. That's what we should look to? Yes. You look, secondly, there is a memorandum from... This is an example, this says this is how we handled this particular... It's the rationale for why it was done. For what happened for the Boy Scouts. Correct. The second thing that you look at is you look at Nick Jackson's memo to Eric Gordon, and both of these documents are attached to the Jackson Declaration. So if the plaintiff gives hats and t-shirts, they might qualify? I don't... I'm not going to confuse what operating costs are, because you look at their own complaint, at paragraph 25, they claim these things to be operating costs. Then through argument, without any evidence, they expand it to we provide all of these other things without putting even a declaration in that any of this is actually true. If you give out a t-shirt, what's that worth? And is that part of your... Why don't they take them on a weekend retreat where they talk about the Bible? Present that to us. Okay. They asked you for... I'm sorry. I'm wondering if these two parties, is there any reason why the school system just doesn't want this organization in their schools? No. We've had them in there before. Yeah. We have a mediator. I mean, this case strikes me, this appeal strikes me, as one that is ripe for some kind of reconciling the parties' stances. I'm not sure you don't want this organization. Perhaps this organization would like to make some law. That's to be decided, but... I think based upon the track record of the cases in which they seem to be... It's more about making law. They've been in our facility before. And candidly, Your Honor, if you look at the analysis done, there's nothing related to speech content or viewpoint. Why should you not have a written statement of this exception? You have a fee waiver policy. It's perfectly... I'm sorry. You have a fee policy. Correct. It is perfectly reasonable for every organization, even thinking about approaching your school, to assume that you have to pay a fee. Then it turns out that, well, there's really another way to do it. You can pay in kind. I disagree with that fundamentally, Judge White, and I'll tell you why. We have a policy that does not contain any fee waiver because that is the preferred method to go. We have evidence of two limited instances in this record where we were approached to do something different than writing a check. And did we get value above and beyond... Do you have any instances where folks did write checks? Oh, yeah. That's typical. That's typical. That's the norm. And it is done. And to your point, we aren't... Is that in the record just for my benefit? I mean, we're all talking about the exceptions here, but apparently there's somewhere set forth a fee. Yes, and that is attached, again, to the Jackson Declaration. So we have a fee, a published fee, but we don't have any publication of the here's how you can get around it. Correct. Because the norm and the normal mechanism is if you want to use our facilities after school, you pay the $70 an hour. And, again, we aren't out in the public soliciting or... Okay, so you get a letter that says, hey, we want to be treated like the Boy Scouts. And what's your response? My response is they do not want to be treated by the Boy Scouts because what they're offering is their program, and then they conflate their operating cost for that program, which anybody that comes in is going to have. But did you... They asked you to be treated like the Boy Scouts. What was the response? There was no response from the district. Why? I can't answer that, Your Honor. And the reason is, if you look at it, they asked for a fee waiver, and the district's position was we do not do fee waivers. But they had the impression that the Boy Scouts got one, and no one comes back and says, no, they really didn't get one. That's what we do. Your Honor, I can't... I know, it's terrible, isn't it? If it were in a perfect world, if it were up to me, you would always get a response to everything. Why wouldn't the judge do what we're doing? The judge looked at the evidence before it, and what the judge said was, appellant, you have the burden, by clear and convincing evidence, to establish all of the elements for a preliminary injunction. What is the evidence before the court on that very limited issue? And the evidence was only the evidence submitted by us. But the evidence is uncontroverted. The Boy Scouts are meeting there without writing a check. Because they gave our kids $125. I understand, but then you're saying there's no evidence. The evidence is that they're meeting there without writing a check. You provide the explanation because blah, blah, blah. Then they get to challenge that explanation. Right. But isn't that the time when they come forth with some evidence to support their claims? What they did was just argue. There's no evidence. So the court is basing a decision on whether clear and convincing evidence has been submitted to prove it. The evidence was all in your possession. Your Honor, they chose not to do any discovery. They chose to waive an evidentiary hearing on the issue of a preliminary injunction. There may have been shortcomings in the way that it was all presented, and we are here at a preliminary injunction stage. That's the only complaint really before us procedurally? Yes. Candidly, what I believe is there was a formula to how these cases progress. And if you read all of the cases, they're all fee waivers. This is a case that's a little bit different because you don't see. What other cases are there, cases of this nature? Oh, you see, the Boy Scouts are a lightning rod in virtually every case cited by both parties for a fee waiver. It's a flat-out fee waiver where we're not charging these people, but we're charging these people, and there's no consideration. It's a classic, and that's naturally how it developed. So if you look at what the judge had to base his decision on, I believe the court made the correct decision. Was the burden of clear and convincing evidence carried in this case based upon the evidence? And the court concluded it did not. Once it had the benefit of your, which, of course, the Movens didn't have. Okay, but at that point you can request that the court conduct an evidentiary hearing. You can request that the court stay its opinion on this until discovery is done. You can do any number of things to put whatever evidence in the record you want to support your case. The fact of the matter is they elected to substitute argument for evidence. And when the court found that there was no fee waiver policy, which is entirely accurate, and these were in-kind exchanges, the court found that they didn't carry their burden. To show what? To show by clear and convincing evidence that they had a likelihood of success on the merits. Yeah, but, I mean, what evidence would you have them put on? Saying, oh, my gosh, you just argued. They could have put on evidence disputing rather than just arguing about the merits of the like-kind exchanges. Had they taken the positions of all your people. Yes. Okay, so you're saying, did they argue to the court that there is something, whatever the defendants choose to call it, and that it has no objective parameters and its application is not even consistent with what it says? In their answer brief, yes. In their opening brief, no. Okay, but it seems to me it makes sense that it would be, it's a response to your defenses. And did the judge address that? Yes. The judge addressed the argument. I believe the judge. The judge said there is or is not an in-kind policy. The judge looked at, the judge found that there was no fee waiver policy, which was the claim, and found that the in-kind arrangement was not a fee waiver. We were getting something above and beyond. How does that, I guess I'll look at the record and see what was written. It's a very brief record, if for nothing else. We appreciate that. Thank you. Thank you. May it please the Court. Why didn't you ask for an evidentiary hearing? It was clear on the face of what was happening that it was a question of law. But this isn't a question of law. But the policy was a question of law. By the time we got to the point of the hearing, they had come up with their answer brief, we had issued the reply brief, and, in fact, we did have evidence. It's a verified complaint. But as soon as your case hinges on fee waiver, and you come to know, perhaps unfairly, that the district doesn't view it as a fee waiver, that they get something in returns regardless of whether you think it has value, then to say that there's a fee waiver problem here, the district court said, there's no fee waiver. But what was briefed and what was argued was the in-kind arrangement situation because that came up in the answer brief, and we issued a reply, and we thoroughly briefed it, and that was thoroughly argued. And if you look at the defendants, they say, we're just trying to make case law. If that was the case, we wouldn't have issued a letter in March of 2013 asking for equal treatment. We wouldn't have issued the e-mails that are part of the record that go up to May of 2013 to the district representatives and the council. We wouldn't have sent a letter to all of the school board members. If we wanted to just rush into court and create some brand-new case law, we wouldn't have done those different requests. So is the goal today to get your organization in the school, does that remain a goal? Now that we've gone this far, you'd rather just run it out? Well, you know, we want to have the ultimate goal has been from the very beginning, which is the reason for the letters, the reason for the e-mails, the reason for the telephone calls is to get CEF in the school and to have equal treatment. That's it. And that's what we're still here about today. We want to have equal treatment. But the policy that they are now presenting, and, in fact, they did braze the beyond the normal programming cost for the first time in the answer brief. That's not in any scout's letter. It's not in the declaration. And they even pointed to the website to say, see, this is beyond the normal programming cost. In fact, even today they say, well, they want to conflate operating cost. Well, that sounds like beyond the normal programming cost. But isn't it true that the Boy Scouts are giving them things? It's one thing to say we have a fee waiver, the Boy Scouts, to say, look, we encourage everybody to join, and if you have a problem paying for these things, we'll provide them. It's a little bit different from saying that come to the Boy Scouts, this is what we give you. Right, but CEF does the same thing. In fact, that's part of the complaint that's verified, that we provide all of these things free of charge to the school students. That's not the point. Their drinks, their snacks, their workbooks, the curriculum, all of these are provided to the students free of charge. They're making a different point. They're saying that the Boy Scouts have programming that they normally provide, and then they have other things that they don't normally provide, and those are the things that they're providing free of charge. Do we know what that is? That's the problem. But that's why you needed to have a hearing. No, on the face of the policy, even today, they use the word beyond the conflating operational cost. Does the face of this policy, this in-kind policy that we know exists now, according to this litigation, does the face of this policy give us or this court any comfort as to how you meet that? Does the face of the policy indicate what is a tangible benefit to the students, staff, or the school? Does the face of this policy say what's beyond the normal programming cost or your conflating operational cost? Does the face of this policy help us at all to meet the objective, and that is to have equal treatment? And the answer is no. It is a classic prior restraint, and that is a pure question of law, because we know what their policy is at this point. We know that it has moving parts, and we know that it's vague. We don't even know what the, quote. . . Does the Child Evangelism Fellowship have, are there a fair number of cases to be, when I search, will they be. . . Yes, and they're not all. . . Indicating around the country? Yes, and they're not all. . . In fact, the first one, the first major one, there were ones before that. The first Supreme Court one was June of 2011, and that was the Child Evangelism Fellowship versus the Milford case out of New York. And that was a situation where they allowed the scouts on campus, but not the good news clubs, which Child Evangelism Fellowship does. Same thing here. And there's a thorough discussion about this, and ultimately equal treatment was granted. Then there's a number of other federal district cases and federal courts of appeal cases, and there are multiple. They're not all fee-raver. I guess the purpose for this is beyond our role here today, but I do suggest that if there is a goal simply to get your organization in this school, that you and we offer the benefit of our mediator to get that done, to find out what it would take. Okay, sure. That was the original plan. I take it that it was. In terms of the . . . But it may have been that you would still love to see this come out with a wonderful opinion that would help your organization. And the court will work toward whatever we need to do to resolve this case. If we find that the parties have resolved it in the meantime through the help of our mediator, are you willing? Are you interested in this, counsel? Your Honor, I obviously . . . You have to talk to your client, of course. But I'm certainly willing to do that, and certainly willing to communicate what their sentiments are to counsel. Right. Is there a reason why this can't be put in writing? I'm not saying you have to disseminate to everybody, but is there a reason why you can't have your policy in writing? It's still at discretion. With all due respect, Judge White, I'm struggling with the word policy because these are kind of two isolated instances that came up. Okay. Your Honor, I might just say certainly we're willing to do whatever. Our ultimate objective is to be in the school. We missed an entire academic year now because of this constant moving ball and not knowing how to have equal treatment. I would say one thing, that during the argument, there was a quote that says that's a decision of the school. When one of your honors asked about what the school was doing, that's a decision of the school to do this with the scouts. Well, that's a problem if it's the school's arbitrary discretion to just do whatever it wants to. And on the face of its policies and even on the church lease, they're engaging in unbridled discretion. And that's the problem before this court. It's the problem before the district court, which the district court did not address, which it should have. It was fully briefed and argued. And what we have is a classic legal question on a prior restraint before this court, which we believe is unconstitutional. And one other question. How much would it cost per year for you to have your meetings there? It's a little over $1,000, but these are all voluntary groups that do it. They provide the services and they provide the, I should say, the goods. And do you ever, for schools that have an absolute fee arrangement, do you ever pay the fee for access? There's probably 3,000 to 4,000 of these around the country in terms of the number, and there's a variety. So sometimes you do pay. Sometimes we do and sometimes we don't. Oftentimes what they do, most schools, in fact, around the country, for the scouts as well as for these good news clubs, see this as a benefit to the students because it provides some opportunity for the students after school and they provide equal treatment for it. They can have other kinds of graduated fees if you're going to have something after school, but it's not for the kids, maybe for the community, then we'll give you this fee. But most of the time it's free, but sometimes it's paid, but always it must be equal, and that's what we have in this case, a lack of equality. We understand your argument. Thank you for presenting it so well today. We'll issue an opinion in due course, but I will have the mediator contact both of you. I hope that you'll consider that just to get your goal reached sooner. With that, we'll adjourn court.